**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |  |
|---|---|---|
| PARAH, LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OZONICS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 6:18-cv-1208 |
| | ) | |
| v. | ) | |
| | ) | |
| MOJACK DISTRIBUTORS, LLC, | ) | |
| d/b/a SCENT CRUSHER, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MOJACK DISTRIBUTORS, LLC'S RESPONSE
OPPOSING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

Defendant MoJack Distributors, LLC ("MoJack"), by and through counsel, opposes Plaintiff Parah, LLC ("Parah") and Plaintiff Ozonics, LLC's ("Ozonics") (collectively referred to as "Plaintiffs") motion for a preliminary injunction. Plaintiffs cannot meet the demanding requirements for an injunction under Federal Rule of Civil Procedure 65. Therefore, this Court should deny Plaintiff's motion for preliminary injunction.

## INTRODUCTION

This is a patent infringement case involving hunting products. Plaintiffs allege MoJack's Scent Crusher Products infringe the Ozonics Patents. At the outset of this litigation, Plaintiffs seek a preliminary injunction to exclude the Scent Crusher Products from the consumer market. Plaintiffs have failed to satisfy any of the four necessary elements to obtain preliminary injunctive relief.

First, Plaintiffs cannot establish a likelihood of success on the merits. MoJack has raised a substantial question as to non-infringement of the asserted claims, given the Scent Crusher

Products' lack of discharging the claimed "stream" of ozone or oxidizing gas. Further, MoJack has raised a substantial question as to the validity of the Ozonics Patents, presented in the attached declarations and discussed below, in that the patent claims recite an invalid combination of features present in the scent elimination prior art as taught by Dawson, Stec, and Hess.

Second, Plaintiffs have not established that they will suffer irreparable harm. All of the harms alleged by Plaintiffs (e.g. lost sales, lost market share, and damaged reputation) can be remedied with money damages and therefore do not qualify as irreparable harm for the purposes of a motion for preliminary injunction. Furthermore, the evidence offered in support of the harms alleged by Plaintiffs is speculative and conclusory.

Third, the balance of the equities weigh in MoJack's favor. Plaintiffs' evidence of infringement is weak and MoJack would be substantially harmed if a preliminary injunction is issued.

Finally, the public interest would not be served by issuing a preliminary injunction. The public has a compelling interest in free competition. The public's interest in free competition takes precedence over its interest in enforcing patents when the patent-in-suit may be invalid or when there is a substantial question as to whether the defendant is actually violating the patent-in-suit.

Because Plaintiff has failed to meet the exacting standard for preliminary injunctive relief, Plaintiff's preliminary injunction motion should be denied.

WA 11582601.11

## MOJACK'S STATEMENT OF FACTS
## IN SUPPORT OF THIS RESPONSE OPPOSING PLAINTIFF'S MOTION

1.      Plaintiffs filed their Motion for Preliminary Injunction (the "PI Motion") on July 19, 2018. *See* **(Doc. 6).**

2.      Plaintiffs filed three declarations in support of the PI Motion. *See* **(Docs. 7 – 9).** Specifically, they filed declarations from the following individuals:

   a.      Affidavit of Brett L. Foster. *See* **(Doc. 7) (the "Foster Decl.").** Mr. Foster is lead counsel for Plaintiffs in the above-captioned matter.

   b.      Affidavit of Charles "Buddy" Piland. *See* **(Doc. 8) (the "Piland Decl.").** Mr. Piland is an Executive Vice President for Ozonics, LLC.

   c.      Affidavit of Scott Elrod. *See* **(Doc. 9) (the "Elrod Decl.").** Mr. Elrod is the founder and CEO of Parah, LLC and Ozonics, LLC.

3.      In support of this response in opposition to Plaintiffs' motion for preliminary injunction, MoJack has filed the declaration of Elizabeth A. Friis (the "Friis Decl.").

4.      Parah owns U.S. Patent No. 7,939,015 (the "015 Patent"), U.S. Patent No. 8,404,180 (the "180 Patent"), and U.S. Patent No. 8,557,177 (the "177 Patent") (collectively referred to as the "Ozonics Patents"). *See* **Friis Decl., Exhibits C, D, and E.**

5.      Plaintiffs claim that MoJack's alleged conduct is "directly infringing at least claims 1, 3, 7, and 11 of the `180 patent, claims 1, 2, and 4 of the `177 patent, and claims 1 and 4 of the `015 patent." *See* **(Doc. 1, ¶ 43).**

6.      Plaintiffs claim that MoJack's alleged conduct actively induces others to infringe "at least claims 1, 3, 7, and 11 of the '180 patent, claims 1, 2, and 4 of the '177 patent, and claims 1 and 4 of the '015 patent." *See* **(Doc. 1, ¶ 44).**

7.      At least the following are prior art that predate the December 21, 2004 filing/priority date of the Ozonics Patents:

WA 11582601.11

    **a.**    U.S. Patent No. 5,914,119 to Dawson, filed Dec. 16, 1996, and issued June 22, 1999. ***See* Friis Decl., Exhibit F.**

    **b.**    U.S. Patent No. 7,222,634 to Hess et al., filed January 20, 2004, and issued May 29, 2007. ***See* Friis Decl., Exhibit G.**

    **c.**    U.S. Patent Application Publication No. 2007/0166186 to Stec, claiming priority in U.S. provisional patent application no. 60/543,505, filed February 11, 2004. ***See* Friis Decl., Exhibit H.**

8.    MoJack never offered to go into a joint venture with Plaintiffs. ***See* Dan Drake Declaration (the "Drake Decl."), ¶ 7.**

9.    It is undisputed that Plaintiffs voluntarily decided to stop selling their "ozone generating units" (the "Product") through retailers such as Cabela's and Bass Pro Shop. ***See* Elrod Decl., ¶ 17.**

10.    Plaintiffs rely exclusively on the Elrod Declaration for factual allegations in support of their irreparable harm claim. ***See* (Doc. 6, pgs. 7 – 19).**

11.    The Elrod Declaration does not contain any allegations or make reference to any documents that show actual decreased revenue, actual lost sales, or actual price erosion. ***See* Elrod Decl. generally.**

12.    If this Court enters a preliminary injunction as requested by Plaintiffs then MoJack would be unable to honor the contractual agreements it entered into with its retail partners. ***See* Drake Decl., ¶ 15.**

13.    There are more than two competitors in the relevant product market. ***See* Drake Decl., ¶ 9-11.**

14.    MoJack took out a line of credit to make the investments necessary to bring the Field Lite and Field Pro (the "Scent Crusher Products") to market. If this Court issues a preliminary injunction as requested by Plaintiffs then MoJack will likely breach the covenants on which the line of credit is conditioned. ***See* Drake Decl., ¶ 17.**

WA 11582601.11

# ARGUMENT

## I.   STANDARD OF REVIEW

The decision to grant or deny injunctive relief is an act of equitable discretion by the district court. *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). However, it is also well settled that a preliminary injunction is "a drastic and extraordinary remedy that is not to be routinely granted." *See Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993); *see also Abbott Labs v. Andrx Pharm., Inc.*, 452 F.3d 1331, 1335 (Fed. Cir. 2006).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A] movant cannot be granted a preliminary injunction unless it establishes *both* of the first two factors, *i.e.*, likelihood of success on the merits and irreparable harm." *See Amazon.com v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (emphasis original).

Because this is a patent case, there is a specialized burden shifting procedure when determining whether there is a substantial likelihood of success on the merits as to invalidity.[1] *See Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376-80 (Fed. Cir. 2009) (affirming district court's denial of plaintiff's motion for preliminary injunction). A patent enjoys

---

[1] "It is important to remember that, however engaged the court may be in the process of determining whether the alleged infringer has shown a 'substantial question' of invalidity as we have explained it, that process does not change the court's ultimate decision point. As the Supreme Court and this court [i.e., the Federal Circuit] have made clear, the first factor to be dealt with in the preliminary injunction analysis is the traditional one: has the plaintiff established a likelihood of success on the merits? Asking whether the challenger has raised a substantial question of invalidity in the manner we have described may be a useful way of initially evaluating the evidence, but the ultimate question regarding the first preliminary injunction factor remains that of the patentee's likelihood of success on the merits. The Supreme Court has stated that the general rules applicable to injunctions in civil actions apply equally to injunctions in patent cases; there is no room for making the substantial question test a substitute or replacement for the established test for injunctions. ***That test places the burden on plaintiff to prove likelihood of success***." *Titan Tire*, 566 F.3d. at 1380 (emphasis added).

a presumption of validity at all stages of litigation including during preliminary injunction proceedings. *Id.* at 1377. If the validity of the patent is not challenged then the mere existence of the patent automatically establishes a likelihood of success on the merits. *Id.* However, if the non-moving party challenges the validity of the patent and comes forth with evidence that "raises a substantial question" as to the patent's validity then the burden of proving a substantial likelihood of success on the merits shifts back to the moving-party. *Id.* at 1377. Specifically, the moving party must prove that the non-moving party's invalidity defense "lacks substantial merit." *Id.* at 1378-79. "Thus, when analyzing the likelihood of success factor, the trial court, after considering all the evidence available at this early stage of the litigation, must determine **_whether it is more likely than not_** that the challenger will be able to prove at trial, by clear and convincing evidence,[2] that the patent is invalid." *Id.* at 1380 (emphasis added).

## II.    PRELIMINARY INJUNCTION FACTORS

Plaintiffs have not satisfied the demanding requirements for obtaining a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. First, Plaintiffs did not prove that they have a substantial likelihood of success on the merits. Second, Plaintiffs did not prove that they will suffer irreparable harm unless a preliminary injunction is issued. Third, the balance of equities weigh in MoJack's favor. Finally, the issuance of a preliminary injunction would not be in the public's interest. Therefore, this Court should deny Plaintiffs' motion for preliminary injunction.

---

[2] "Clear and convincing evidence" is **_not_** the relevant decisional standard at the preliminary injunction stage of litigation for assessing whether there is a substantial question as to validity. "Preponderance of the evidence" is the correct decisional standard. The Federal Circuit emphatically makes this point in *Titan Tire*, 566 F.3d at 1380: "The fact that, at trial on the merits, the proof of invalidity will require clear and convincing evidence is a consideration for the judge to take into account in assessing the challenger's case at the preliminary injunction stage; **_it is not an evidentiary burden to be met preliminarily by the challenger_**." (Emphasis added).

### a. Plaintiffs do not have a substantial likelihood of success on the merits.

Plaintiffs do not have a substantial likelihood of success on the merits. First, even on this limited preliminary record, the facts show that MoJack is not infringing the Ozonics Patents. Second, even if this Court believes there is some evidence of infringement, MoJack has raised a substantial question as to the validity of the Ozonics Patents. Therefore, this Court should hold that Plaintiffs have failed to establish a substantial likelihood of success on the merits and should deny Plaintiffs' motion for preliminary injunction.

### i. MoJack is not infringing the Ozonics Patents.

This Court should deny Plaintiffs' motion for preliminary injunction because Plaintiffs have not presented any evidence of direct infringement by MoJack or by third parties.[3]

### 1. A court must engage in a two-step analysis to determine whether a patent is being infringed.

An infringement analysis involves two steps: (1) determining the scope of the claims, including the construction of disputed claim terms, and (2) comparing the "properly construed" claims with the accused device "to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *See Amazon.com*, 239 F.3d at 1351.

### 2. To establish direct infringement, the plaintiff-patentee must prove that the defendant is practicing every limitation of an independent claim.

"One may infringe an independent claim and not infringe a claim dependent on that claim. The reverse is not true. One who does not infringe an independent claim cannot infringe a claim dependent on (and thus containing all the limitations of) that claim." *See Monsanto Co. v. Syngenta Seeds, Inc.*, 503 F.3d 1352, 1359 (Fed. Cir. 2007). Therefore, to infringe a patent you

---

[3] Although Plaintiffs state the Ozonics Patents cover their HR300 and HR230 commercial embodiments of the inventions, they have put forth no evidence that their products meet all of the limitations of the method steps of any claim of the Ozonics Patents. *See* Doc. 1, ¶¶14-15.

WA 11582601.11

must meet all of the limitations of at least one independent claim. *Id; see also Creo Prod., Inc. v. Presstek, Inc.*, 148 F. Supp. 2d 416, 418 (D. Del. 2001) ("[s]ince dependent claims contain all the limitations of independent claims (plus others), if the court finds the accused product does not infringe [independent] claims . . . then it is must follow that the accused product does not infringe [dependent] claims . . . ").

### 3. A claim for indirect infringement fails unless the patentee is able to provide evidence of direct infringement.

To prevail under a theory of indirect infringement (also referred to as "inducement infringement") the patentee must prove that the defendant's actions led to direct infringement of the patent-in-suit by third parties. *See Power Integrations, Inc. v. Fairchild Semiconductor Int., Inc.*, 843 F.3d 1315, 1333 (Fed. Cir. 2016) (citing *Dynacore Holdings Corp. v. U.S. Phillips Corp.*, 363 F.3d 1263, 1274 (Fed. Cir. 2004) ("To prevail under a theory of indirect infringement, Dynacore must first prove that defendants' actions led to direct infringement of the [patent-in-suit].").).

"A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all steps are carried out. This principle follows ineluctably from what a patent is: the conferral of rights in a particular claimed set of elements. 'Each element contained in a patent is deemed material to defining the scope of the patented invention,'(internal citation omitted), and a patentee's rights extend only to the claimed combination of elements, and no further." *See Limelight Networks, Inc. v. Akami Techs., Inc.*, 134 S.Ct. 2111, 2117 (2014).

### 4. Conclusory affidavits of corporate executives cannot, in and of themselves, establish infringement.

Federal courts have repeatedly refused to hold that a patentee has successfully established a likelihood of infringement when the only evidence presented in support of the alleged

WA 11582601.11

infringement is the conclusory affidavit of a corporate executive. *See Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1329 (Fed. Cir. 2010) ("Unless the claim language only requires the capacity to perform a particular claim element, we have held that it is not enough to simply show that a product is capable of infringement; the patent owner must show evidence of specific instances of direct infringement."); *see also Advanced Commnc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 Fed.App'x 964, 979-80 (Fed. Cir. 2002) (holding that district court clearly erred by granting a preliminary injunction based on the conclusory and unsupported allegations in the patentee's affidavit); *see also* 11A Wright & Miller, Federal Practice & Procedure § 2949, at 215 (2d ed. 1995) ("All affidavits should state the facts supporting the litigant's position clearly and specifically. Preliminary injunctions frequently are denied if the affidavits are too vague or conclusory to demonstrate a clear right to relief under Rule 65.").); *see also Puma SE v. Forever 21, Inc.*, Case No. CV 17-2523 PSG E, 2017 WL 4771003, at * 3-4 (C.D. Cal. June 2, 2017) (denying plaintiff's motion for preliminary injunction).

In the *Advanced* case, the plaintiff-patentee (Advanced Communication Design or "ACD") owned a patent that covered an "apparatus for allowing multiple customers at music or video retail stores to simultaneously sample an audio or visual product (e.g. a compact disc, a movie DVD or a video game) at the store itself." *See Advanced*, 46 Fed.App'x at 974. ACD claimed that the networking software in the defendant's (Premiere Retail Networks or "PRN") competing product infringed on one of the claims in ACD's patent. *Id.* at 979. ACD filed suit against PRN and applied for a preliminary injunction. *Id.* ACD relied exclusively on the affidavit of ACD's chief executive officer (Marcos Scibora) and a letter from its patent counsel to establish infringement. The undisputed facts show that there were three versions of the allegedly infringing networking software (version 1.0, 2.0, and 3.0). Despite this fact, Mr. Scibora's

affidavit did not recognize or acknowledge that there were different versions of the networking software. Furthermore, neither Mr. Scibora nor anyone else employed by ACD, had actually observed version 1.0 or version 3.0 of the networking software. The district court granted ACD's motion for preliminary injunction but the Federal Circuit vacated that order on appeal to the extent it applied to version 1.0 and version 3.0 of the networking software.

The Federal Circuit held that the district court committed reversible error by allowing ACD to rely exclusively on the conclusory affidavit of Mr. Scibora to establish infringement:

> We agree and hereby undo the preliminary injunction as to versions 1.0 and 3.0 of the Interactive Network. [ACD's] evidence of infringement here consists of nothing more than a conclusory assertion by its CEO Scibora and an equally conclusory assertion by its patent counsel. Further, neither Scibora nor anyone else on Advanced's behalf asserts that their conclusions turned on having personally observed the accused 1.0 and 3.0 versions. (Indeed, nothing in [ACD's] affidavit or letter even recognizes that the accused Interactive Network has three versions.) Rather, [ACD's] knowledge appears to rest on the telephone conversation that it had with [PRN] personnel before suit began. . . . *In short, we are convinced that the district court clearly erred by finding a likelihood of infringement by versions 1.0 and 3.0 based on the conclusory evidence submitted by [ACD], the party that bears the burden of showing an entitlement to extraordinary relief of a preliminary injunction*."

*Id.* (emphasis added).

### 5. Plaintiffs have not offered any evidence showing specific instances of MoJack or third parties directly infringing the Ozonics Patents.

Plaintiffs have not offered any evidence showing specific instances of MoJack or third parties directly infringing the Ozonics Patents. Instead, Plaintiffs rely solely on: photographs from Scent Crusher's website; Scent Crusher's publicly available marketing materials; photographs of various retailers' websites; and photographs from various retailers' social media accounts. *See* Elrod Decl., ¶¶ 23-24, 29-35, 38-40, 44-45 and 52. The evidence presented by Plaintiffs does not show specific instances of third parties directly infringing the claims in Ozonics Patents. Therefore, Plaintiffs have failed to establish direct or indirect infringement for

WA 11582601.11

preliminary injunction purposes and this Court should deny Plaintiffs' motion for preliminary injunction.

The claims in Ozonics Patents cover a narrow and specific set of method steps. For example, claim 7 of the '180 Patent recites the following method steps. *See* (Doc. 9-1, pg. 4):

> "A method of eliminating scents, the method comprising: generating a stream of oxidizing gas with an oxidizing gas generator; and mounting the oxidizing gas generator relative to a hunter in the (sic) a field in which game animals are present such that the stream of oxidizing gas eliminates scents associated with the hunter in air traveling downwind of the hunter."

To establish infringement of Claim 7 (or any other claim in the Ozonics Patents) Plaintiffs are required to provide evidence of specific instances of MoJack or third parties practicing the method exactly as claimed. Plaintiffs have not offered any evidence of specific instances in which the methods covered by the Ozonics Patents are being practiced by MoJack exactly as drafted or that the methods covered by the Ozonics Patents are being practiced by third parties exactly as drafted.

Plaintiffs' Complaint (Doc. 1), Plaintiffs' Motion for Preliminary Injunction (Doc. 6), and the Elrod Declaration (Doc. 9) (which will from here on be referred to collectively as the "PI Pleadings") are devoid of critical points of proof. For example, as to Claim 7 of the 180 Patent, the PI Pleadings do not contain any allegations or reference any evidence which proves that: (1) the pictured Scent Crusher Products are "generating a stream of oxidizing gas"; (2) the pictured Scent Crusher Products are "in a field in which game animals *are* present";  or (3) the steam of oxidizing gas eliminates scents in air traveling downwind of a hunter.

Therefore, Plaintiffs have failed to establish direct infringement by MoJack or third parties and because they have failed to establish direct infringement by third parties they have also failed to establish that MoJack is indirectly inducing others to infringe the Ozonics Patents. Therefore, this Court should deny Plaintiffs' motion for preliminary injunction.

WA 11582601.11

      **6.**   **The conclusory allegations in the Elrod Declaration and the claims chart drafted by Plaintiffs' counsel cannot establish infringement for preliminary injunction purposes.**

Plaintiffs rely exclusively on the Elrod declaration and the claim chart authored by their legal counsel to support their infringement claim. *See* (Doc. 6, pgs. 7 – 19). As is discussed above, the conclusory allegations of corporate executives and/or the plaintiff-patentee's legal counsel cannot, in and of themselves, establish infringement for  preliminary injunction purposes. *See Advanced*, 46 Fed.App'x at 979-80. Therefore, Plaintiffs have failed to establish infringement and this Court should deny their motion for preliminary injunction.

Like Mr. Scibora (the CEO of ACD), Mr. Elrod does not suggest that he has actually used or directly observed the real-life use of the allegedly infringing products. Instead, all of his allegations are speculative comments based on his review of Scent Crusher's website and its marketing materials. *See* Elrod Decl., ¶ 59 ("Fourth, based on my review of pictures of Scent Crusher's new products and the claimed specifications for the Field Pro and Field Lite units, I believe that Scent Crusher's ozone generators are inferior to Ozonics' generators for the following reasons: . . ."). In fact, it is impossible for Mr. Elrod to have had direct experience with the Scent Crusher Products at the time he issued his declaration because the Scent Crusher Products were not yet available for sale to the general public. *See* (Doc. 9, pg. 12, ¶ 29) ("The presentation states that the Field Pro and Field Lite will be available to ship the week of August 6, 2018."). If Mr. Scibora's affidavit could not be accepted as valid evidence of infringement because he never directly observed version 1.0 or version 3.0 of the networking software in use then Mr. Elrod's conclusory and speculative testimony about the Scent Crusher Products should

not be accepted either. By his own admission, Mr. Elrod has not actually used or witnessed the use of the products he claims are infringing the Ozonics Patents. *Id.*

> **7.** **Even in view of Plaintiffs' circumstantial evidence, neither MoJack nor its products, infringe the claims of the Ozonics Patents.**

Even if this Court accepts the Plaintiffs' conclusory and speculative evidence of infringement (which it should not), the evidence presented by Plaintiffs does not prove that MoJack or users of their products are infringing the asserted independent claims of the Ozonics Patents, or that Plaintiffs are more likely than not to succeed in proving infringement.

First, the Scent Crusher Products do not discharge, or apply "a steam of ozone" as required by claim 1 of the '015 Patent (Friis Decl., ¶ 154), claim 12 of the '177 Patent (Friis Decl., ¶175), or generate or discharge, or apply "a stream of oxidizing gas" as required by claim 9 of the '015 Patent (Friis Decl., ¶ 159), claims 1 and 7 of the '177 Patent (Friis Decl., ¶¶ 165 and 171), and claims 1, 7, and 18 of the '188 Patent (Friis Decl., ¶¶ 181, 184, and 189). As admitted by Plaintiffs, the Scent Crusher Products create a blanked or circle of protection of ozone.  Doc. 1, ¶¶ 31 and 33, and Exhibits D-F (claim charts); Foster Decl., Exhibits 1 and 2; Elrod Decl., ¶¶ 32, 37, and 40. As described by Dr. Friis, the Scent Crusher Products release a volume of ozone gas in multiple directions. Friis Decl., ¶¶ 154. During examination of the '015 Patent the inventor surrendered the scope of the claimed invention by removing the term "a volume of ozone gas" in favor of a more narrow "gaseous steam."  Friis Aff. ¶¶ 65-66. A stream of ozone gas would be understood as different from a blanket or circle of ozone created by the Scent Crusher Products. *Id.* Thus, the Scent Crusher Products do not discharge or apply "a stream of ozone," or generate or discharge, or apply "a stream of oxidizing gas" as required by the independent claims of the Ozonics Patents. Friis Decl., ¶¶ 161, 177, and 193.

Second, there is no evidence that the Scent Crusher Products "eliminate" scents, such as human scent and other scent foreign to the open atmosphere, according to the claimed method steps of claims 1 and 9 of the '015 Patent (Friis Decl., ¶¶ 154 and 159), claim 12 of the '177 Patent (Friis Decl., ¶ 175), and claims 1, 7 and 18 of the '180 Patent (Friis Decl., ¶¶ 181, 186, and 191), or "deodorize" the hunter, hunting clothing, and hunting equipment according to the claimed method steps of claims 1 and 7 of the '177 Patent (Friis Decl., ¶¶ 165 and 171). As admitted by Plaintiffs, the Scent Crusher Products provide scent control. Doc. 1, ¶¶ 32 and 41. "Eliminate" and "deodorize" are absolutes. As addressed by Dr. Friis, there is no evidence the Scent Crusher Products attain the absolute elimination and deodorization of all of the recited items (hunter, equipment, etc.), according to all of the steps of the claimed methods of the Ozonics Patents. The Scent Crusher Products have not been shown to meet all of the limitations of the asserted claims according to all of the recited method steps. Friis Decl., ¶¶ 155, 160, 166, 172, 176, 182, 187, and 192. Therefore, there is no evidence the Scent Crusher Products infringe the asserted claims, and Plaintiffs are not likely to prove infringement.

### ii. MoJack raises a substantial question as to the Ozonics Patents' validity.

Plaintiffs allege "all of the known prior art was submitted to the USPTO" (Doc. 1, ¶ 13), and that the volume of prior art reviewed implies the Ozonics Patents are presumed valid (Doc. 6, pp. 4-5). It is unlikely the USPTO is aware of all prior art relevant to the patentability of the claims of the Ozonics Patents.[4] No patent is absolutely immune from a successful challenge. Given an opportunity to conduct an independent, complete prior art search by a competent searcher, MoJack believes additional material, relevant, and non-cumulative prior art can be

---

[4] At the appropriate time in the litigation, MoJack will proffer an advice of counsel, that it has in its possession, that the Ozonics Patents are invalid.

found. But, even in view of the limited prior art search thus far, there is a substantial question whether the Ozonics Patents are valid.

As explained by Dr. Friis, the asserted claims of the Ozonics Patents likely claim an obvious, invalid combination of established features and methods of eliminating scent from a hunter's body, clothes, and equipment, including the use of ozone, known in the prior art. Friis Decl., ¶¶ 58-59, 100-102, and 122-125. For example, claims 1 and 4 of the '015 Patent (Friis Decl., ¶¶ 73-83, and 86), claims 1, 2, and 4 of the '177 Patent (Friis Decl., ¶¶ 106-108), and claims 1, 3, 7, and 11 of the '180 Patent (Friis Decl., ¶¶ 130, 132, 135, and 138) are likely invalid as obvious over the combination of Stec, Dawson, and Hess, in that all of the claimed elements are taught and illustrated and Stec, Dawson, and Hess.[5]

Stec illustrates and discloses the well-known concept of a device and method for using an oxidizing agent (ozone) in an airspace to remove the odor given off by a hunter, and the hunters' equipment, such as clothes, weapons, and ammunition. Friis Decl., ¶¶ 77-80. In particular, Stec discloses an "ozone generator 52" capable of being portable (Friis Decl., ¶¶ 78) dispersing a stream of ozone 78 into the atmosphere of a room 50, whereby the ozone is being applied directly to and coming into contact with a hunters equipment (clothes 70, gear, etc.) and a hunter in the room to eliminate scents. Friis Decl., ¶ 78. Further, Stec discloses a portable ozone generator 52 contained within a suitcase that can be transported with the hunter to a hunting location. Friss Decl., ¶ 80.

---

[5] Dawson is not a reference that was disclosed to or before the examiner when evaluating the patentability of the Ozonics Patents. Parah's U.S. Patent No. 8,066,939, filed February 24, 2010, and issued November 29, 2011, was pending during the examination of the '015 and '177 Patents, and FIG. 1 of the '939 Patent is nearly identical to FIG. 1 of Dawson – but Dawson was not disclosed to the examiner during examination of the '015, '177, **_or_** '939 Patents.



FIG. 3

Stec further discloses that a hunter exiting the room 50 through an exterior door 54 to the outside to hunt would cause ozone exiting the room to enter the open atmosphere outside the hunting lodge where the hunting field would be located. Friis Decl., ¶ 79.

Stec does not explicitly disclose transporting an ozone generator by the hunter into the field, hanging the ozone generator in an open atmosphere in which the hunter and game animals are present, resulting in the ozone coming into contact with the hunter, his equipment, and the foreign scents to be eliminated downwind from the hunter where the game animals may reside. Dawson[6] discloses and explains use of a cover scent in an open atmosphere where game 12 are present downwind of a hunter 60 and his equipment in a blind 62 to mask foreign scents from being detected by the game 12 downwind. Friis Decl., ¶ 76.

---

[6] FIG. 1 of Dawson is the same

WA 11582601.11



Hess describes a portable ozone generator that produces ozone gas that can be brought into the hunting field with the hunter. Friis Decl., ¶82. The ozone generator draws air into a hunting blind with a hunter, his equipment, and scents, and exhausts the descented air from the blind downwind into the hunting environment. *Id*. Reversing the flow of air to move the ozone gas into contact with the hunter, his equipment, and then exhausting the descented air into the hunting environment would be expected to accomplish the same result. Friis Decl., ¶ 83 (addressing Hess).

The combination of Stec, Dawson, and Hess raise a substantial question of invalidity of the Asserted Claims because all of the features and method steps of the Ozonics Patents are taught by at least these three prior art references. Friis Decl., ¶¶ 98-99, 122-123, and 146-147. The various limitations of non-asserted independent and dependent claims of the Ozonics Patents are similarly rendered obvious in view of at least Stec, Dawson, and Hess. Friis Decl., *passim*.

Plaintiffs argue the Ozonics Patents were analyzed for nearly a decade by the USPTO in view of 150 prior art references, concluding the claimed inventions were novel and patentable. (Doc. 6, pp. 4-5). Although the inventor inundated the examiner with prior art references on

information disclosure statements, other than the references address by the examiner, it can hardly be said that it is proof all of the prior art submitted was carefully considered by the examiner.

### b. Plaintiffs did not prove that they will suffer irreparable harm unless a preliminary injunction is issued.

"The essence of showing irreparable harm is demonstrating an injury that money damages cannot sufficiently remedy." *See Volie Mfg. Corp. v. Dandurand*, 551 F.Supp.2d 1301, 1307 (D. Utah 2008) (citing *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995). A conclusory affidavit alleging probable loss of market share and harm to the patentee's business cannot, in and of itself, establish irreparable harm. *See Volie*, 551 F.Supp.2d at 1305-1307. Plaintiffs' claims of irreparable harm are based exclusively on the conclusory declaration of Mr. Elrod. *See* SOF ¶ 9. Mr. Elrod does not allege any facts or reference any documents which show that Plaintiffs' damages, if any, could not be remedied by money damages. Therefore, Plaintiffs have failed to establish that they will suffer irreparable harm in absence of a preliminary injunction and this Court should deny their motion for preliminary injunction on that basis.

### i. Conclusory affidavits cannot, in and of themselves, support a finding of irreparable harm.

To establish that it has already suffered or will imminently suffer irreparable harm, a patentee must do more than present a court with a conclusory affidavit. *See Voile Mfg. Corp. v. Dandurand*, 551 F. Supp. 2d 1301, 1307 (D. Utah 2008). It must present substantial independent evidence of irreparable harm. *See Sanofi-Synthelabo v. Apotex, Inc.*, 488 F.Supp.2d 317, 342-343 (S.D.N.Y. 2006) (granting motion for preliminary injunction because, in addition to establishing

the other relevant factors, the patentee presented substantial independent evidence of irreparable harm), *aff'd*, 470 F.3d 1368, 1382 (Fed. Cir. 2006); *cf. Volie* 551 F.Supp.2d at 1307.

The *Sanofi-Synthelabo* case arose from a dispute over patents on blood-thinning medications. *See Sanofi-Synthelabo*, 488 F.Supp.2d at 321. Sanofi owned patents on a prescription blood-thinning medication called Plavix. Apotex was a competitor that sought to offer a generic equivalent to Plavix. It was undisputed that the generic drug offered by Apotex infringed Sanofi's patent. However, the question of whether Sanofi's patents were valid was hotly disputed. Sanofi filed a motion for preliminary injunction and presented the following evidence in support of its claims of irreparable harm: (1) the declaration of a Sanofi executive and (2) the testimony of an economics expert. The testimony and declaration established that Sanofi was subject to a complicated web of regulations and rebate agreements[7] which would ultimately force it to match the defendant's low pricing or risk being completely unable to sell any Plavix at its current prices in the future. Therefore, the district court held that irreparable harm had been established and the Federal Circuit affirmed that holding on appeal. *Id.*

The *Volie* case arose from a dispute over patents on ski bindings. *See Voile*, 551 F.Supp.2d at 1302-03. Burnt Mount Designs, LLC ("Burnt Mountain") filed a patent infringement counterclaim against Voile Manufacturing Corporation ("Voile") and sought a

---

[7] "Sanofi has submitted evidence, which the Court credits, that it has been forced to offer rebates and discounts to persuade third-party payors—such as pharmacy benefit managers and health maintenance organizations, who pay in part for 85% of all purchases of prescription drugs in the U.S.—to maintain Plavix on a favorable drug formulary pricing tier. (Decl. of Hugh O'Neill dated Aug. 13, 2006 at ¶¶ 7, 19.) This pricing tier affects the amount an insured consumer must pay when he or she purchases a prescription drug. (O'Neill at ¶¶ 8–11.) The introduction of a generic product will ordinarily lead third-party payors to place Plavix in a less favorable tier, causing patients to pay a higher copay for the drug. (Id.) Sanofi has shown, on the evidence adduced so far, that this change will have several irreversible effects on Sanofi. First, if Sanofi decides to provide discounts or rebates to persuade third-party payors to maintain Plavix on a favorable pricing tier, it will face pressure from those third-party payors to continue the discount or rebate scheme, even if Apotex were ordered to discontinue distributing generic clopidogrel. (O'Neill at ¶¶ 16–21.) If Sanofi decides to keep Plavix at its current price, there is the possibility that it will suffer losses due to unfavorable tier placement, and will have difficulty persuading third-party payors to restore the original tier placement in the event the generic clopidogrel product can no longer be distributed, due to the presence in the marketplace of existing supplies of the generic." *See Sanofi-Synthelabo v. Apotex Inc.*, 488 F. Supp. 2d 317, 342 (S.D.N.Y.), *aff'd*, 470 F.3d 1368 (Fed. Cir. 2006).

WA 11582601.11

preliminary injunction. Burnt Mountain relied exclusively on the conclusory affidavit of the President of Burnt Mountain (Louis Dandurand) to support its claims of irreparable harm. The district court held that Burnt Mountain failed to establish irreparable harm and denied its motion for preliminary injunction:

> Here, Burnt Mountain relies on statements by Mr. Dandurand in his second affidavit to describe the harms it would suffer if an injunction did not issue. . . . Mr. Dandurand's conclusory affidavit is not enough to demonstrate irreparable harm here. Courts require more than unsupported factual conclusions to support such a finding. . . . The present case illustrates why this is so. Mr. Dandurand does not make clear to the court how Burnt Mountain is being devalued by the sale of the Switchback. Nor does Mr. Dandurand point to any potential licensees who have refused to enter agreements because of the presence of the Switchback. And there is no evidence before the court regarding the sales of either Burnt Mountain's bindings or of the Switchback, making it impossible to determine whether or to what extent Burnt Mountain's market share has been eroded.

*Id.* at 1307.

Plaintiffs have failed to establish irreparable harm because they rely exclusively on the conclusory declaration of Mr. Elrod. Unlike Sanofi, Plaintiffs have not offered substantial independent evidence showing that they will suffer irreparable harm. They have not offered any evidence or expert testimony regarding regulations or contractual arrangements that would require Ozonics to provide its customers with rebates or to match the lowest price available regardless of whether doing so is profitable or economically rational. Instead, like Burnt Mountain, they rely on the conclusory sworn statements of a corporate executive that consists solely of speculative complaints about the potential for lost market share, lost sales, and price erosion. This type of evidence is not enough to establish irreparable harm for the purposes of issuing a preliminary injunction.

WA 11582601.11

**ii. Plaintiffs' speculative claims regarding lost market share cannot support a finding of irreparable harm.**

"[L]ost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction, because granting preliminary injunctions on the basis of speculative loss of market share would result in granting preliminary injunctions 'in every patent case where the patentee practices the invention.'" *See Automated Merch. Sys., Inc. v. Crane Co.*, 357 F.App'x 297, 301 (Fed. Cir. 2009). Plaintiffs have not offered any evidence, other than Mr. Elrod's speculative allegations, in support of their claims of lost market share and, therefore, have failed to establish irreparable harm.

In *Automated Merch. Sys. v. Crane Co.*, the plaintiff-patentee (AMS) sought a preliminary injunction against the defendant (Crane Co.). *Id.* at 299. AMS offered the affidavit of the President of AMS (Sharon Shull) in support of its motion for preliminary injunction. *Id.* at 301. Ms. Shull's testimony established that Crane Co.'s actions had caused one of AMS's distributors (Mountain Coin Machines) to stop carrying AMS's products. Relying on the affidavit, the district court held that irreparable harm had been established and granted AMS's motion for preliminary injunction. *Id.* But the Federal Circuit reversed that holding on appeal:

> The proof of lost market share and lost sales cited by the district court here was insufficient to meet this standard. The district court cited an affidavit from Sharon Shull, AMS's president, which stated that Crane's acquisition of a distribution company (Automatic Products) placed Crane's allegedly infringing machines in many of the same showrooms as AMS's machines; that one of AMS's dealers (Mountain Coin Machines) asked AMS to no longer list it as a distributor soon after Crane introduced its allegedly infringing products; and that AMS's production levels and employment depended on the sales of AMS machines that competed with Crane's allegedly infringing machines. *To the extent that these harms stem from Crane's alleged patent infringement, we cannot conclude that they have been shown to be non-compensable by monetary damages. The only one that might reasonably be considered non-compensable is AMS's loss of one distributor, Mountain Coin Machines. We cannot agree that, under the circumstances of this case, the defection of a single distributor from the patentee's camp to the accused infringer's camp is sufficient to demonstrate irreparable*

WA 11582601.11

*harm*. The district court's contrary finding is legally and factually unsound. . . . Given the lack of evidence supporting any type of harm that would not be compensable through monetary damages, we hold that the district court clearly erred by finding that AMS demonstrated irreparable harm.

*Id.* at 301-02 (emphasis added).

Plaintiffs have not offered a single example of a customer that stopped buying Ozonics' products and switched to the Scent Crusher Products. But even if they did, that testimony or evidence would not be enough to establish irreparable harm because lost sales can be remedied with money damages. Therefore, this Court should deny Plaintiffs' motion for preliminary injunction.

### iii. Plaintiffs' speculative claims regarding price erosion are irrelevant because Plaintiffs have not offered any evidence that the offering of lower prices by competitors would force Ozonics out of the market entirely.

"[P]rice erosion — without evidence that the patentee would be *entirely* forced out of the market by the infringer's lower prices —  is not irreparable harm." *See Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F.Supp.2d 527, 533 (D. MD. 2010) (emphasis original) (citing *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F.App'x 297, 300-01 (Fed. Cir. 2009).).

Plaintiffs claim that the sale of "inferior" in-the-field ozone products at a lower price could cause Ozonics to lose customers and/or force it to sell its products at a lower price. *See* Elrod Decl. ¶ 61. But all of these claims are speculative. Most importantly, Plaintiffs have not offered any evidence showing that the sale of Scent Crusher's in-the-field ozone products would completely and permanently force Ozonics out of the market. The undisputed facts show that, regardless of whether a preliminary injunction is issued, Ozonics will be free to sell its products at any price point it wants through its website and at trade shows. *See* Elrod Decl. ¶ 17. Therefore, Plaintiffs have failed to establish irreparable harm and this Court should deny their motion for preliminary injunction.

WA 11582601.11

### iv. Plaintiffs' speculative claims regarding potential lost sales revenue are irrelevant because lost sales are compensable through money damages.

"[P]otential lost sales revenue is compensable through damages, evidence of such losses is insufficient by itself to support a finding of irreparable harm." *See Mike's Train House*, 708 F.Supp.2d at 533 (citing *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679 (Fed. Cir. 1990.).).

Plaintiffs make numerous allegations about the possibility of lost sales in support of their claim for irreparable harm. *See* Elrod Decl. ¶¶ 56-58. These allegations are irrelevant because the Federal Circuit has repeatedly and consistently held that lost sales alone is not sufficient to establish irreparable harm. Even if lost sales were relevant (which they are not), Plaintiffs have not come forth with evidence of actual lost sales. Therefore, Plaintiffs have failed to establish irreparable harm and this Court should deny their motion for preliminary injunction.

### v. Scent Crusher is not Ozonics' only competitor.

Plaintiffs' claim that this is a "two company market" is incorrect. *See* (Doc. 6, pg. 6) (citing Elrod Decl. at ¶ 21). MoJack has identified multiple other competitors that sell comparable products. *See* Drake Decl. ¶ 9 (e.g., Hunting Made Easy and ScentLok). Therefore, this Court should disregard any irreparable harm or damages claims by Plaintiffs that are premised on the assumption that Ozonics and Scent Crusher are the only two companies in the relevant market. If the relevant market is defined as in-the-field portable ozone generators for hunters then there are at least four companies (including Ozonics) in the relevant market. *Id.* If the market is broadly defined as all scent control products then there are dozens of companies in the relevant market. *Id.*

WA 11582601.11

### c. The balance of equities weigh in MoJack's favor.

Courts do "not weigh in a vacuum the harm to one party from the grant of the injunction against the harm to the other party from the denial of the injunction. Rather, the Federal Circuit has explained: 'The magnitude of the threatened injury to the patent owner is weighed, in the light of the strength of the showing of likelihood of success on the merits, against the injury to the accused infringer if the preliminary decision is in error.'" *See Curlin Med., Inc. v. Acta Med., LLC*, 228 F.Supp.3d 355, 362 (D. N.J. 2017) (quoting *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed. Cir. 1987).). The magnitude of the threatened injury to Plaintiffs is minimal, Plaintiffs' showing of likelihood of success on the merits is weak, and the issuance of a preliminary injunction would substantially harm MoJack. Therefore, the balance of equities weigh in MoJack's favor.

The balance of the equities weigh in favor of the defendant when the evidence of infringement is weak and the issuance of an injunction would cause the defendant to breach its pre-existing contractual obligations. *See FieldTurf USA, Inc. v. Astroturf, LLC*, 725 F.Supp.2d 609, 617-18 (E.D. Mich. 2010). In *FieldTurf*, the plaintiff-patentee (FieldTurf USA) sued the defendant (Astroturf) for allegedly infringing its patent on synthetic-grass athletic fields and sought a preliminary injunction. *Id.*at 612. FieldTurf USA failed to prove that Astrotruf's product infringed its patent. *Id.* at 614. Furthermore, Astroturf offered evidence showing that the issuance of a preliminary injunction would prevent it from servicing customers that had already torn out their grass fields in anticipation of installing Astroturf's synthetic-grass fields and that a failure to install the fields on time would trigger contractual liquidated damages provisions. *Id.* at 618. The district court held "that based on the evidence in the record, the plaintiff's weak evidence of infringement, and the evidence of irreparable harm to the defendant, the balance of the equities does not favor injunctive relief in this case." *Id.*

WA 11582601.11

The balance of equities do not weigh in Plaintiffs' favor for three reasons. First, Plaintiffs' evidence of infringement is weak. As is discussed above: (1) the evidence offered by Plaintiffs does not prove that MoJack or that third parties are practicing the Ozonics Patents exactly as drafted and (2) the factual allegations offered in support of their legal claims are conclusory and speculative. Second, the magnitude of threatened injury to Plaintiffs is minimal. Plaintiffs have not offered any evidence of lost sales and, even if MoJack is allowed to sell the Scent Crusher Products through retailers, Plaintiffs will still be able to sell their products through their website and at tradeshows.[8] Finally, MoJack will be substantially injured if this Court issues a preliminary injunction. If this Court issues a preliminary injunction then MoJack would be unable to honor the contractual agreements it entered into with its retail partners. *See* Drake Decl., ¶ 15. Additionally, MoJack took out a line of credit with its bank to make the investments necessary to bring the Scent Crusher Products to market. *Id.* at ¶ 17. If this Court issues a preliminary injunction as requested by Plaintiffs then MoJack will likely breach the covenants on which the line of credit is conditioned. *Id.*

This Court should deny Plaintiffs' motion for preliminary injunction because the balance of equities weigh in MoJack's favor. Plaintiffs' evidence of infringement is weak, the magnitude of threatened injury to Plaintiffs is minimal, and MoJack will be substantially injured if a preliminary injunction is issued in error.

### d. The issuance of a preliminary injunction would not be in the public interest.

"'From their inception, the federal patent laws have embodied a careful balance between the need to promote innovation and the recognition that imitation and refinement through

---

[8] It is undisputed that Plaintiffs voluntarily decided to stop selling their products through retailers such as Cabela's and Bass Pro Shop. *See* (Doc. 9, ¶ 17). Plaintiffs were not forced out or otherwise prevented from selling through retailers. Therefore, Plaintiffs' claim that Ozonics is "a small innovator faced with the imminent threat of being squeezed out of its only business" should be disregarded by the Court. *See* (Doc. 6, pg. 2).

WA 11582601.11

imitation are both necessary to invention itself and the very lifeblood of a competitive economy.'" *See Figueroa v. United States*, 466 F.3d 1023, 1034 n. 16 (Fed.Cir. 2006) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 146 (1989).). Therefore, "in a patent infringement case, although there exists a public interest in protecting rights secured by valid patents, the focus of the district court's public interest analysis should be whether there exists some critical public interest that would be injured by the grant of preliminary relief." *See Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988). The public has an important interest in free competition. *See The Shane Group, Inc. v. BCI Burke Co., LLC*, Case No. Case No. 1:02-CV-58, 2002 WL 32059737, at *8 (W.D. Mich. Aug. 12, 2002). In this case, the public's interest in free competition outweighs the public's interest in the protection of patent rights. Therefore, the issuance of a preliminary injunction would not be in the public interest.

"The public interest favors competition . . . where an asserted patent may be invalid or the accused system may be non-infringing." *See Gryphon Oilfield Solutions, LLC v. Stage Completions (USA) Corp.*, Case No. H-17-3220, 2018 WL 447364, at *5 (S.D. Tex. Jan. 17, 2018) (denying plaintiff's motion for preliminary injunction). For example, the Federal Circuit affirmed a district court order holding that the public's interest in favor of enforcing patent rights did not outweigh the public's interest in promoting free competition when the evidence of infringement was weak. *See Illinois Tool Works Inc. v. Grip-Pak, Inc.*, 725 F. Supp. 951, 959 (N.D. Ill. 1989), *aff'd*, 906 F.2d 679 (Fed. Cir. 1990):

> Public policy favors protection of patent rights. (internal citation omitted). Such protection, however, should not come at the expense of legitimate competition. In all likelihood, Grip–Pak is competing legitimately with ITW in the beverage carrier market. To inhibit such competition upon a remote showing of infringement is not in the public interest, as it will be the public who will pay for such unnecessary protection.

In this case, the issuance of a preliminary injunction would not be in the public interest. Plaintiffs have made a very weak showing of infringement. Plaintiffs' conclusory and speculative evidence does not even establish that the Ozonics Patents are being infringed. Furthermore, MoJack has raised a substantial question as to the validity of the Ozonics Patents. At bottom, Plaintiffs are attempting to use the legal system to shield themselves from legitimate competition from comparable but non-infringing products. Therefore, the issuance of a preliminary injunction is not in the public interest.

## CONCLUSION

Plaintiffs have not satisfied all of the requirements needed in order to obtain a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure. First, the evidence offered by Plaintiffs does not establish direct or indirect infringement by MoJack or third parties. Second, Plaintiffs have failed to prove that they have a substantial likelihood of success on the merits. Third, Plaintiffs have failed to prove that they will suffer irreparable harm if a preliminary injunction is not issued. Fourth, the balance of equities weigh in MoJack's favor. Finally, the issuance of a preliminary injunction would not be in the public's interest. Therefore, this Court should deny Plaintiffs' motion for preliminary injunction.

Respectfully submitted,

SPENCER FANE LLP


/s/ Brian Peterson
Douglas M. Weems          KS #14771
Kyle L. Elliott           KS # 18169
Kevin Tuttle             KSD Bar No. 78436
Brian Peterson           KS # 26303
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216- Fax
dweems@spencerfane.com
kelliot@spencerfane.com
ktuttle@spencerfane.com
bpeterson@spencerfane.com
*Attorneys for MoJack Distributors, LLC*

WA 11582601.11

## CERTIFICATE OF SERVICE

I hereby certify that, on August 9, 2018, a copy of the foregoing was served via this Court's CM/ECF system to all parties receiving electronic notice.

/s/ Brian Peterson

**Attorney for MoJack Distributors, LLC**

WA 11582601.11